UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BARBARA A. KIMBLE,
o/b/o A.G.K., a minor

    Plaintiff,

vs.                                                  Case No.  6:11-cv-1063-Orl-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application filed on behalf of her child for Social Security benefits. The Court has reviewed the record, briefs, and applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Barbara A. Kimble ("Plaintiff") filed an application on behalf of her child ("Claimant") for Child Supplemental Security Income on July 9, 2007, alleging Claimant became disabled on October 1, 2006. (Tr. 105). On February 22, 2008, the Social Security Administration denied her application. (Tr. 65). As a result, Plaintiff filed a

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15)

request for reconsideration, which was denied on June 23, 2008. (Tr. 71-73). On August 25, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on January 13, 2010. (Tr. 74). On March 24, 2010, the ALJ issued a decision finding Claimant not disabled. (Tr. 24). On April 12, 2010, Plaintiff requested a review of the decision by the Appeals Council. (Tr. 1-2). Plaintiff's request was denied. (Tr. 1-4). Having exhausted all administrative remedies, Plaintiff timely filed her Complaint (Doc. 1) on June 27, 2011, seeking judicial review of the ALJ's final decision under 42 U.S.C. § 405(g).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff asserts Claimant became disabled on October 1, 2006, due to Attention-Deficit Hyperactivity Disorder, Pervasive Developmental Disorder, Anxiety, and Oppositional Defiant Disorder. (Tr. 105, 144).

### B.     Summary of Evidence Before the ALJ

Claimant began Intervention Services on June 21, 2006, due to aggression and other behavioral issues. (Tr. 297). After evaluation, Claimant was diagnosed with Disruptive Behavioral Disorder. (Tr. 298). On January 15, 2007, Claimant underwent an initial mental status examination performed by Dr. Raju at Orlando Psychiatric Associates, Inc. (Tr. 353). Dr. Raju's examination revealed the following:

> MENTAL STATUS: inattentive, fully communicative, casually groomed, normal weight, he has poor eye contact, he is answering to questions appropriately, asking same question over and over. His speech is normal in rate, volume, and

> articulation and is spontaneous.  Mood is entirely normal with no signs of depression or mood elevation.  Affect is appropriate, full range, and congruent with mood.  No suicidal ideas or intentions are present today.  Homicidal ideas or intentions are convincingly denied.  There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process.  Clinically, IQ appears to be in the below average range.

(Tr. 353).  Subsequently, Dr. Raju diagnosed Claimant with Attention-Deficit Hyperactivity Disorder (combined type) and Pervasive Developmental Disorder.  (Tr. 353).  In addition, Dr. Raju recommended Claimant undergo an IQ test and continue therapy.  (Tr. 354).  Upon discharge, Dr. Raju prescribed Daytrana and Risperdal.  (Tr. 354).

Claimant continued follow up visits with Dr. Raju starting in January 2007 and continuing through December of 2007.  (Tr. 370, 402).  In April 2007, Dr. Raju re-examined Claimant.  (Tr. 272, 400).  During the examination, Plaintiff reported the medication was working to some degree, but also reported Claimant's hyperactivity and concentration problems continued.  (Tr. 272).  Plaintiff also noted Claimant's current medication did not have any side effects.  (Tr. 272).  In addition, Plaintiff alleged Claimant's loss of temper, defiance, and refusal to comply with requests made by adults, was typical of his behavior.  (Tr. 272).  Claimant's mental status evaluation revealed the same findings as the January 15, 2007 evaluation.  (Tr. 272-73).  Dr. Raju assessed a GAF of 55.  (Tr. 273).  Dr. Raju made the same diagnosis as the January 15, 2007 evaluation.  Dr. Raju advised Claimant to discontinue Risperdal, continue Clonidine, and begin Strattera.  (Tr. 273).

On June 21, 2007, Claimant went back to Intervention Services. (Tr. 297). At this time, Plaintiff reported Claimant had aggression six to seven times per day. (Tr. 297). However, Claimant's GAF score had risen to 62. (Tr. 297). Claimant's Intervention Services were terminated on September 1, 2007. (Tr. 297). The noted reason for termination was: "Claimant's goals were met." (Tr. 298). Upon discharge, Claimant's aggressive outbursts had reduced to one or two times per week. (Tr. 298). Although Claimant discontinued Intervention Services, he continued to seek treatment from Dr. Raju. On October 26, 2007, Dr. Raju increased Claimant's medication dosage for Strattera to 5mg and Seroquel to 50mg. (Tr. 328). However, Dr. Raju continued Claimant's regular dosage of Clonidine. (Tr. 328). On November 26, 2007, Dr. Raju noted Claimant's continued temper tantrums. (Tr. 326).

In January of 2008, Claimant's teacher, Vonda Campbell, completed a teacher questionnaire that assessed Claimant's overall functioning. (Tr. 152-59). The evaluation showed low ratings in the areas of comprehension, understanding and participating in class discussions, application of previously learned material, ability to focus, multi-tasking, organization, patience, use of vocabulary, planning, remembering tasks, personal hygiene, sensory input and output, strength coordination, and mobility. (Tr. 152-59). On June 2, 2008, Claimant was evaluated by Dr. William Austin. (Tr. 403-05). Claimant was given a full scale IQ test. (Tr. 403). Claimant scored a 72, which fell within the borderline range of intellectual functioning. (Tr. 404). With regard to Claimant's achievement assessment, Dr. Austin noted the following:

>His academic skills and fluency with academic tasks are both within the low range. When compared to others at his grade level, Claimant's performance is below average in broad reading, mathematics, math calculation skills, and written expression; and low in written language.

(Tr. 405). Dr. Austin found no specific learning disabilities when compared with standardized intellectual test scores. (Tr. 405). In addition, he noted Claimant's test scores were higher than those expected on the basis of his intelligence. (Tr. 405). Dr. Austin diagnosed Claimant with Attention-Deficit Hyperactivity Disorder (combined type), Oppositional Defiant Disorder, and Borderline Intellectual Functioning. (Tr. 405).

Later in the month of June 2008, Claimant's records were reviewed by state agency psychological consultant Michael Hammonds, Ph.D. Dr. Hammonds affirmed the initial rating of Dr. Yerushalmi and affirmed the mental status opinion of Dr. Austin. Sixteen months later, Claimant returned to Intervention Services on October 22, 2009. Upon discharge, Claimant was diagnosed with Disruptive Behavior Disorder, Attention-Deficit Disorder, and retained a GAF score of 50. (Tr. 412). From August 16, 2009 through December 15, 2009, Claimant continued to see Dr. Raju. During this time frame, Dr. Raju continued to prescribe medication for Claimant's behavioral issues.

On January 11, 2010, Claimant's teacher, Ms. McPherson, completed teacher questionnaires entitled: "Learning Strategies Checklist" and "Social Skills Checklist." (Tr. 194-95). On these forms, Ms. McPherson rated Claimant's functional capacity (based on a scale of 1-5) in a number of categories. (Tr. 194-95). A score of 1 indicated "Rarely" and a score of 5 indicated "Frequently." Numbers 2, 3, and 4 served as variables of degree. (Tr. 194-95). The categories used in the questionnaire were as

follows: Communication, Self Control, Problem Solving, Social Interaction, Classroom Behavior, Written Expression, Listening, Reading, and Test Taking. In almost every category listed, Claimant received a rating of 2 or lower. (Tr. 194-95).

    **C.**    **Summary of the ALJ's Decision**

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, a claimant must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. Under the applicable regulations, the Commissioner employs a three-step evaluation process. First, he determines whether the claimant is engaged in substantial gainful activity. If not, the next determination is whether the claimant has a severe impairment or combination of impairments. If so, the Commissioner must then determine whether the impairment or combination of impairments meet *or* is medically *or* functionally equal to an impairment listed in Appendex 1 of 20 C.F.R. part 404, subpart P, and otherwise satisfy the duration requirement. Where each of these requirements is satisfied, the claimant will be found disabled. 20 C.F.R. §§ 416.924 - 416.926a; Wilson v. Apfel, 179 F3.d 1276, 1277 n.1 (11th Cir. 1999). See also 20 C.F.R. § 416.926a.

In the instant case, the ALJ followed the three-step evaluation process required by law. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since October 19, 2007, by noting Claimant was a minor and had never worked. (Tr. 12). At step two, the ALJ determined Claimant had the following severe

impairments: Attention-Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), seasonal asthma, and anxiety. (Tr. 12). The ALJ found the impairments caused more than minimal functional limitations. (Tr. 12). At step three, the ALJ determined Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926). With regard to his findings, the ALJ stated the following:

> The claimant's impairments are not of the severity described in section 112.00 *et seq.* The claimant does not have marked inattention, impulsiveness, and hyperactivity, with marked impairments in age-appropriate cognitive/communicative function, and appropriate social functioning, or age-appropriate personal functioning, nor marked difficulties in maintaining concentration, persistence, or pace.

(Tr. 12).

Next, the ALJ determined Claimant did not have an impairment or combination of impairments that functionally equaled the listings (20 C.F.R 416.924(d) and 416.926(a)). (Tr. 12). In making this determination, the ALJ indicated she considered all the relevant evidence. The relevant evidence included the following: objective medical evidence, relevant evidence from medical sources, information from school teachers, family members, friends, Claimant's statements, Claimant's parent's statements, statements from other caregivers, and how Claimant functioned over time in various environments. (Tr. 11-12 ).

The ALJ also engaged in a lengthy discussion of her findings with regard to Claimant's degree of limitation in each of the six functional equivalence domains. When determining whether an impairment or combination of impairments functionally equals the listings, the ALJ must evaluate a claimant's abilities within the six domains. (Tr. 17). The ALJ determined Claimant had less than marked limitation in the following domains: Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, Caring for Yourself, and Health and Physical Well-Being. (Tr. 19-22). The ALJ found Claimant had no limitations with the domain of Moving About and Manipulating Objects. (Tr. 21). Based on the foregoing, the ALJ found Claimant not disabled. (Tr. 24).

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.   Issue on Appeal**

Plaintiff argues one primary issue on appeal. Plaintiff argues the ALJ erred in determining Claimant's medical condition did not meet or functionally equal one of the Listing of Impairments. (Doc. 20, p. 8). Specifically, Plaintiff claims the ALJ failed to adequately consider evidence from Claimant's teacher's Learning Strategies Checklist and Social Skills Checklist (Doc. 20, p. 8). Moreover, Plaintiff argues the ALJ should have sought a current medical opinion to determine whether Claimant's condition functionally equaled an impairment under the Listing of Impairments 20 C.F.R. 416.924, 416.925, or 416.926. (Doc. 20, p. 13). The Commissioner argues the ALJ properly considered all the evidence. (Doc. 21, p. 8-9).

**Whether the ALJ's Failure to Consider the Learning Strategies Checklist Constitutes Reversible Error**

Plaintiff argues that had the ALJ considered the checklists completed by Claimant's teacher, she would have reached a different conclusion regarding Claimant's disability. (Doc. 20, p. 12). Additionally, Plaintiff highlights the fact that the checklists were not considered by any of the state agency physicians, whose opinions the ALJ relied on in finding Claimant not disabled. (Doc. 20, p. 11). As a result, Plaintiff argues both opinions rendered by the state agency physicians should not have been relied on because they were unable to consider all of the relevant evidence. (Doc. 20, p. 11).

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. §§ 404.1520(a), 416.920(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the judge "should state the weight [s]he accords to each item of impairment evidence and the reasons for [her] decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that [her] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, [s]he is not required to discuss all of the evidence

presented, but rather must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In this case, Plaintiff is correct that it appears the ALJ failed to consider the checklists. Nowhere in the decision are the checklists mentioned. Moreover, the undersigned finds the checklists to be significantly probative in that they contradict the ALJ's findings. Specifically, the checklists indicate Claimant has significant limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating to others. The undersigned recognizes that the checklist does not specifically reference the six domains considered by the ALJ, however, it is clear that the teacher's rating of Claimant rarely staying on task and paying attention would have some impact on Claimant's ability to attend and complete tasks. Further, the teacher's opinion that Claimant could rarely read textbooks on grade level, follow written directions, answer comprehension questions independently, pass tests, complete short answer and essay questions, draw conclusions and make inferences, and be able to organize for and study for tests indicates limitations in Claimant's ability to acquire and use information. Finally, the teacher's belief that Claimant could rarely interpret or infer what others say; control impulsive behavior; and accept criticism, praise, or success with appropriate behavior indicates limitations in Claimant's ability to interact and relate to others.

While it is not clear that the teacher's ratings would necessarily lead to a finding of marked limitations in any of the domains, the ALJ was required to discuss the checklist and state the weight she accorded to it as well as her reasons for either

accepting or rejecting that evidence. Lucas, 918 F.2d at 1574. Without such, it is impossible for the Court to determine whether or not the ALJ's decision was supported by substantial evidence. Accordingly, the Court will remand this matter for the ALJ to reconsider the checklists.

**Whether the ALJ was Required to Order Further Medical Examinations**

Plaintiff argues the ALJ should have ordered further medical examinations because the examinations she relied on did not include the questionnaires provided by Ms. McPherson. (Doc. 20, p. 13). The ALJ has a duty to fully and fairly develop the record. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988). In fulfilling her duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). Consequently, the ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917.

The ALJ's decision to order further medical examinations is discretionary. The ALJ's opinion appears to address all evidence regarding Claimant's alleged disability, except for the checklists. Consequently, the Court finds that its decision to remand the case instructing the ALJ to consider the checklists will also allow the ALJ to determine whether or not more medical tests are necessary. After the ALJ considers the

checklists, she should order Claimant to undergo further medical examinations if she believes they are necessary to make an informed decision.

## V.     CONCLUSION

In sum, the Court finds the ALJ erred when she failed to discuss significantly probative evidence and explain why it was rejected.  As a result, the Commissioner's decision is hereby **REVERSED** and **REMANDED**.  On remand, the ALJ shall consider the checklists and explicitly articulate her reasons for accepting or rejecting this evidence.  Additionally, the ALJ may conduct any further proceedings she deems appropriate, including ordering further examinations, in light of any new findings.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration.  **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, this  20th  day of August, 2012.

　　　　　　　　　　　　　　　　　　　　　MONTE C. RICHARDSON
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record